# IN THE COURT OF APPEALS OF IOWA

No. 22-0692
Filed July 20, 2022

**IN THE INTEREST OF P.C. and P.C.,**
**Minor Children,**

**C.M., Mother,**
　　Appellant,

**C.J., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.

　　A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

　　Jody R. Rowe of Bradfield and Rowe, Davenport, for appellant mother.

　　Brian P. Donnelly of Mayer, Lonergan and Rolfes, Clinton, for appellant father.

　　Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

　　Rebecca Sharpe of Aitken, Aitken & Sharpe, P.C., Bettendorf, attorney and guardian ad litem for minor children.

　　Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**BOWER, Chief Judge.**

A mother and father separately appeal the termination of their parental rights. We affirm on both appeals.

**I. Background Facts & Proceedings**

C.M. (mother) and C.J. (father) are the parents of P.C.1, born in 2017, and P.C.2, born in 2020. The parents were historically the only caregivers for the children.

On December 12, 2020, the mother called emergency medical services (EMS) because P.C.2 was not breathing properly. EMS brought P.C.2 to the hospital, and medical personnel observed an abrasion to the child's head and blood coming from his nose. The child was transferred to the University of Iowa Hospitals for additional tests and treatment. The tests revealed four-month-old P.C.2 had suffered at least two separate brain injuries, six rib injuries with new or healing fractures, spinal column fractures, and leg fractures. The infant also tested positive for environmental exposure to methamphetamine. The infant's injuries were "extremely consistent with physical abuse" and were sustained "on at least two separate occasions." P.C.1's investigatory scans did not show any fractures or bone injuries, and other than some language development delays, her tests "came back fine."[1]

On December 12, P.C.1 was placed with a maternal relative under a safety plan, and P.C.2 was also placed with the same relative shortly thereafter. On January 12, 2021, petitions were filed to adjudicate the children as children in need

---

[1] P.C.1 was not tested for exposure to methamphetamine.

of assistance (CINA), and on January 15 the juvenile court ordered the children's formal removal from the parents' custody.

The parents were drug tested at the time of removal; the father's hair test came back positive for methamphetamine, and the mother's tests came back negative. The parents suggested P.C.2's injuries could be from birth, from therapy, or were inflicted by the medical personnel when transporting the child from the hospital to Iowa City. Each parent denied they or the other parent caused P.C.2's injuries.

On March 23, the juvenile court adjudicated the children CINA. The court specifically found "one or both of these parents physically abused [P.C.2] on two separate occasions." The court further found the children were in the exclusive care of the parents at the time of the injuries and "[o]ther medical and accidental causes of [P.C.2]'s injuries have been excluded by his doctors." The parents were ordered to participate in mental-health evaluations, and the father was ordered to participate in a substance-abuse evaluation and any recommended treatment.

Neither parent fully participated in services. Despite a history of domestic violence in their relationship, including a 2018 arrest of the father, both parents denied domestic violence to the caseworker. The parents participated in two sessions of couples counseling in April and May 2021, then cancelled or did not appear for additional appointments. In August, the mother participated in a psychological evaluation that recommended additional therapy; she failed to follow through. The father had two substance-abuse evaluations and attended treatment for a short time in 2021 but did not finish.

The mother left the father and moved to the Chicago area from summer 2021 through early 2022. While she was there, the Iowa Department of Human Services (DHS) attempted to set up a home study for possible placement of the children. The mother told the Illinois social worker she did not wish to proceed at that time because she did not think her home was suitable. She did not seek out the children's medical reports or reach out to a local hospital where the children could receive necessary on-going care. The mother attended visitation when possible but was inconsistent in attending virtual solution-based casework (SBC) contacts with the family-centered services worker. In February 2022, the mother returned to Iowa and the father.

The juvenile court terminated the parental rights of each parent to both children under Iowa Code section 232.116(1)(d), (e), and (i) (2021) and under section 232.116(1)(f) as to P.C.1. Both parents appeal.

**II. Standard of Review**

"We review termination of parental rights de novo. We are not bound by the factual findings of the juvenile court, but we give them weight, particularly regarding credibility determinations." *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021) (internal citations omitted).

**III. Analysis**

The father raises two issues on appeal: first, the juvenile court erred in determining the children could not be returned to his care, and second, the court should have granted his oral motion to continue made at the outset of the termination hearing.

The mother asserts termination of her parental rights was a violation of her Fifth Amendment right against self-incrimination, DHS did not make reasonable efforts to provide the necessary services for reunification with the children, and the court erred in finding she had no significant and meaningful contact with the children.

*A. Motion to Continue.* The father asserts the juvenile court should have granted his oral motion to continue the termination hearing to afford him reasonable opportunity to consult counsel. "[O]ur review of a district court's denial of a motion for continuance is for an abuse of discretion." *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). "A court abuses its discretion when 'the decision is grounded on reasons that are clearly untenable or unreasonable.'" *Id.* (citation omitted).

The father had two court-appointed counsel during the CINA proceedings, then opted to hire a private attorney. On February 12, 2022, after the father filed a new affidavit of indigency in the CINA and termination cases, the court appointed new counsel.

At the termination hearing on April 6, the father's counsel moved to continue the trial based on lack of contact with his client before the hearing. Counsel explained the father called his office on March 4 and counsel returned the call the next week to the number given by the father, which was the same as the number on the father's financial affidavit. The father did not answer or have voice mail set up, so the attorney could not leave a message. The attorney stated he called "repeatedly from that point on to attempt to establish communication" without

success. Counsel also sent a letter to the father in late March. The father did not contact counsel again after his initial call.

"A motion for continuance shall not be granted except for good cause." Iowa Ct. R. 8.5; *see also In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013). The court ruled the father put "preparation for this hearing at a low priority and did not try to reach out to counsel more than once, so we're going to . . . deny the continuance and allow the case to go forward."

This record does not show the juvenile court abused its discretion. The order setting the date for the termination trial was filed on January 3. The court appointed the father new counsel on February 12. While the father asserts he should have been allowed "this continuance [made on the date of trial] in order to afford the father a reasonable opportunity to consult with counsel," he had almost two months to do so. The father waited almost three weeks to call counsel. After his initial call on March 4, the father neither answered nor returned any calls and made no effort to discuss his case with counsel. The juvenile court's reason for denying the motion to continue is neither untenable nor unreasonable, and the court did not abuse its discretion.

*B. Self-Incrimination.* The mother asserts the juvenile court's orders were "a direct requirement that [she] make admissions regarding how [P.C.2] was injured, and such constitute coercive action in violation of [her] Fifth Amendment rights."

The Fifth Amendment to the United States Constitution "prohibits a State from imposing substantial penalties 'because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.'" *R.B.*, 832

N.W.2d at 378 (citation omitted). But, exercise of that right is not necessarily cost-free—the exercise of a constitutional right may have consequences. *Id.* "A parent's failure to address his or her role in the abuse may hurt the parents' chances of regaining custody and care of their children. However, 'these consequences lie outside the protective ambit of the Fifth Amendment.'" *In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002) (citation omitted). "Our caselaw has long acknowledged 'the requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs.'" *In re D.D.*, 955 N.W.2d 186, 196 (Iowa 2021) (Christensen, C.J., concurring specially) (citation omitted).

In the CINA adjudication order, the juvenile court wrote:

[N]either parent is eager to divulge how [P.C.2] was hurt on at least two occasions. Having them do so will be important in addressing that particular problem. Until that is resolved, [DHS] also can't place the child with the non-abusing parent while services are completed to reunify the entire family. It will also be more difficult to address the physical abuse without knowing the cause(s). Parenting skills, appropriate discipline, and prevention of future physical abuse is a necessity in this case.

The dispositional order acknowledges the parents' concerns about criminal charges but also states: "The case plan and identified services are designed to help both parents address the physical abuse and the father's substance abuse disorder. An honest explanation for how the injuries occurred may be necessary to address and eliminate further physical abuse."

While the mother has a fundamental right not to incriminate herself, the court's orders do not require she do so. She chose to deny P.C.2's trauma was caused by her or the father and failed to participate in any of the treatment and

education to safely care for the children. Her choices have consequences. *See C.H.*, 652 N.W.2d at 150. Termination of the mother's parental rights did not violate her Fifth Amendment right against self-incrimination.

*C. Ground for Termination.* "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We find termination of both parents' rights was appropriate under section 232.116(1)(d). Under section 232.116(1)(d), the court may order termination if it finds both elements:

> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

The father tangentially challenges this ground for termination with a brief argument he had no involvement in the injuries P.C.2 sustained, somewhat addressing the first element, but makes no challenge to the second element. The juvenile court's adjudication order found P.C.2 sustained extensive injuries with no medical or accidental cause while in the exclusive care of the parents, and "one or both of these parents physically abused [P.C.2]." The time to challenge the basis of adjudication was following disposition, rather than at the time of the termination hearing. The father did not timely appeal the order adjudicating the children as

CINA, and we consider the court's finding of abuse is conclusive. *See In re M.W.*, 876 N.W.2d 212, 222 (Iowa 2016). The first element has been established.

The mother only contests the second element of this ground to terminate, stating, "Reasonable efforts require more than listing services and providing phone numbers," particularly in domestic violence cases. "[W]hat constitutes reasonable services varies based upon the requirements of each individual case. Generally, in making reasonable efforts to provide services, the State's focus is on services to improve parenting." *C.H.*, 652 N.W.2d at 147 (internal citation omitted). "[I]n making reasonable efforts to provide services, the State need not search for unavailable services. This is especially so when a parent, as in the present case, presents the awesome challenge of getting treatment for a deficit the parent claims he [or she] does not have." *Id.*

It is unclear what additional services the mother believes DHS should have provided—she failed to ask for any services throughout the proceedings.[2] Rather, the mother denied domestic violence between herself and the father and denied either of them hurt P.C.2 despite their exclusive care. The mother was offered services to help her progress and reunify with the children. She chose not to participate in therapy during the case, was inconsistent with her participation in SBC with the family worker to address family concerns, and chose to move to the Chicago area where DHS had limited ability to offer services. When DHS

---

[2] The mother cites a January 2022 text message where she asked the family services provider to get the father to leave her alone and have her address taken off the reports as a missed request for help. There is no hint in the text message the mother would have been open to services and does not constitute a request for additional services.

explained the steps for her to reunite with the children in Illinois, the mother did nothing. Despite the medical evidence, she continues to assert P.C.2's injuries were not inflicted by her or the father and is once again residing with the father.

The State has established the grounds for termination of both parents' parental rights under Iowa Code section 232.116(1)(d).[3]

**AFFIRMED ON BOTH APPEALS.**

---

[3] Neither parent raises a best-interests or exception-to-termination argument, so we need not analyze those steps of the Iowa Code section 232.116 framework. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).